The **HERTZ CORPORATION,** Plaintiff-Appellee-Cross Appellant,

v.

**RALPH M. PARSONS COMPANY,**
Defendant-Appellant-Cross
Appellee.

No. 27438.

United States Court of Appeals
Fifth Circuit.

Nov. 20, 1969.

784

Monroe E. McDonald of Sanders, Mc-Ewan, Schwarz & Mims, Orlando, Fla., for appellant Ralph M. Parsons Co.

W. David Rogers, Jr., Leon H. Handley of Gurney, Gurney & Handley, Orlando, Fla., for appellee.

Before TUTTLE, WISDOM and BELL, Circuit Judges.

BELL, Circuit Judge:

This is a diversity action brought by the Hertz Corporation seeking indemnification for its payment of judgments rendered against the negligent driver of an automobile rented from Hertz, the driver's employer, and Hertz as joint tortfeasors. Parsons Company, the defendant-appellant, was the employer of the deceased driver of the rented car.

Parsons appeals from the grant of a motion for summary judgment in favor of Hertz, 292 F.Supp. 108.[1] We affirm in part and reverse in part.

Nugent, a New York employee of Parsons, flew to Orlando, Florida, en route to Cape Kennedy for Parsons. He rented an automobile from Hertz in Orlando in order to complete the trip to Cape Kennedy where he had a Parsons business appointment. His airplane ticket was purchased by Parsons and the automobile was rented on a credit card supplied the employee by Parsons. The charge was later paid by Parsons. The rented automobile, being driven by Nugent, negligently collided with another vehicle between Orlando and Cape Kennedy. Two of the passengers in the other automobile were killed and four were seriously injured. Nugent was also killed. Suits were filed against Hertz, Parsons, and the estate of Nugent. Judgments ensued after trial in the aggregate amount of $610,000 against Hertz under Florida's dangerous instrumentality doctrine, against Parsons under respondeat superior, and against the estate of Nugent, the driver. Hertz settled the judgments by payment of $550,000 and then sought indemnification from Parsons in the district court.

At the time of the accident Hertz had a public liability insurance policy with a wholly owned subsidiary, Atlantic National Insurance Company (ANICO), covering any person to whom a car has been rented and any employer of such renter, as well as Hertz itself. This policy was referred to in the form rental agreement signed by Nugent only in general terms: "Renter participates in the benefits of an automobile public liability and property damage insurance policy subject to the terms, conditions, limitations and restrictions thereof * * *." It developed that the limits of liability under the policy were fixed at $950,000 for Hertz and $300,000 for the other insureds.

1. Hertz abandoned its cross-appeal.

Hertz originally sought indemnification for the entire amount of $550,000 paid in settlement of the death and personal injury judgments. The district court, however, limited the amount in controversy to the sum by which the settlement exceeded the $300,000 policy limit applicable to Nugent and Parsons, his employer, and less a $20,000 payment to Hertz by Nugent's insurance carrier,[2] or $230,000.

After the accident but several months before the trial, wherein the judgments were rendered, ANICO was merged with Hertz, and Hertz thereby succeeded to the insuring obligations of ANICO with reference to Parsons. Hertz and ANICO together paid only $65,000 of the settlement cost with the balance, aside from the $20,000 payment from Nugent's carrier, being paid under re-insurance agreements with All State Insurance Company and certain underwriters (Unnamed) at Lloyds of London. Parsons had liability coverage in the amount of $25,000 with Fireman's Fund Insurance Company and excess coverage with certain underwriters at Lloyds (also unnamed). This was over and above the Hertz-ANICO coverage. It is thus apparent that Hertz is proceeding for itself in part and for insurance underwriters in part and that the real defendants are Parsons' underwriters.

By way of a defense to the claim for indemnity, Parsons plead waiver and estoppel based on allegations of conflict of interest and bad faith on the part of Hertz in the defense of the accident litigation. This defense, as distilled, rests on the fact of the difference in insurance coverage as between Hertz and Parsons and the contention that Hertz, although owing Parsons a defense under the insurance coverage, controlled the litigation in such a way as to set up Parsons for the indemnity claim. It is alleged that Parsons was never apprised of the possibility under the Florida law that it might be called on to indemnify Hertz. Moreover, it is urged, Parsons was not advised or represented in a manner so as to avoid the possibility of indemnity.

This defense was rejected by the district court. The rejection came through treating the defense as being in the nature of a claim against counsel for Hertz-ANICO in the accident litigation rather than against Hertz. The court indicated that such claim as Parsons might have against counsel in this regard was not a defense in the present action.

Summary judgment was rendered for Hertz in the amount of $230,000 and this appeal followed. Two issues are presented: One, whether, aside from the defense based on conflict of interest and bad faith, Parsons was due to indemnify Hertz; two, whether the court erred in rejecting the defense based on conflict of interest and bad faith. We affirm as to indemnity and reverse for further proceedings on the defense based on bad faith and conflict of interest.

As to the latter, we hold only that the defense based on these questions must be considered by the court in the light of what it is: A claim against Hertz for its alleged improper conduct, whether through the action of its counsel or otherwise. We do not consider the merits of the defense; in fact, we are not told nor do we readily perceive just how Parsons can escape indemnity liability notwithstanding the alleged conduct of Hertz. In any event, it is a matter for decision of the district court in the first instance and this will include the resolution of factual issues, if any, which may be presented in connection with the defense.

The defense is factually complicated by reason of the same law firm representing first ANICO, then Hertz, and also Fireman's Fund and New Hampshire in the accident litigation. This firm is representing Hertz in the present litigation and refused, at the direction of Hertz, to permit discovery

---

**2.** This was the full amount of the personal coverage of Nugent under a liability policy issued by New Hampshire Insurance Company.

of its file in the accident litigation. To compound the problem, Parsons at one time negotiated with this law firm to represent it on a claim in the accident litigation, later stricken, for punitive damages. Once the facts concerning conflict of interest and bad faith, including the claimed concealment of the difference in coverage as between Hertz and Parsons and the like, have been settled, the district court must then decide whether they are such as to warrant Parsons escaping liability as an indemnitor as a matter of law.

■ As to the indemnity question, and putting the claimed defense aside, it appears that Hertz is entitled to prevail in the first instance under the Florida law. Hutchins v. Frank E. Campbell, Inc., 123 So.2d 273 (Fla.App.1960); cf. Fincher Motor Sales, Inc. v. Lakin, 156 So.2d 672 (Fla.App.1963); and Olin's Rent-A-Car System, Inc. v. Royal Continental Hotels, Inc., 187 So.2d 349 (Fla. App.1966).

■ The cause of action for indemnity rests on the Florida principle that an owner of an automobile, such as Hertz was here, is not in pari delicto with the driver and his employer. The negligence of the driver was imputed to Hertz under the dangerous instrumentality doctrine. Southern Cotton Oil Co. v. Anderson, 1920, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255; Crenshaw Bros. Produce Co. v. Harper, 142 Fla. 27, 194 So. 353 (1940). Parsons' liability is that of a master under the doctrine of respondeat superior. The negligence of the driver and his employer is primary as compared to the secondary negligence of the owner Hertz. Hutchins v. Frank E. Campbell, Inc., supra.

■ Parsons argues that the right to indemnity stems from the law of bailment and that there was no bailment between Hertz and Parsons. The argument goes that the automobile was baled by Hertz to Nugent, the employee who rented the automobile. The *Hutchins*

case was premised on a bailment and this is also the law of some other jurisdictions. See Annot. 43 A.L.R.2d 879, 880. The difficulty for Parsons is that the district court, based on undisputed facts, found as a matter of law that Nugent was in the course and scope of his employment at the time of the accident. This finding, with which we agree, coupled with the fact of the business trip, and the rental of the vehicle for and at the expense of Parsons would constitute Parsons a bailee. A finding of a bailment to Parsons is implicit in the decision of the district court in that the *Hutchins* case was followed. Thus, even on bailment principles the cause of action for indemnity would lie.

■ There is one remaining question and that is whether an owner-lessor is entitled to indemnification where the rental agreement includes payment for liability insurance as here. There are three Florida cases holding that such a liability insurance provision constitutes an exception to the owner's right to indemnification. Morse Auto Rentals, Inc. v. Papandrea, 180 So.2d 351 (Fla.App. 1965); Bordettsky v. Hertz Corp., 171 So.2d 174 (Fla.App.1965); Morse Auto Rentals, Inc. v. Lewis, 161 So.2d 235 (Fla.App.1964). However, in all three cases the amounts in controversy were within the limits of liability coverage provided for the lessee. The court in Morse Auto Rentals, Inc. v. Lewis, supra, noted that a different question would be posed if the personal injury judgment had exceeded the limits of the liability policy covering the lessee and declined to reach the question.

Here Hertz provided liability insurance for the driver and his employer in the amount of $300,000 for a single accident. That coverage fulfilled Hertz's obligation under the rental agreement. The liability insurance exception to the rule permitting indemnification finds its basis in the rental agreement between lessor and lessee and by the same token should be circumscribed by that contract.

Confining the exception to the limits of the policy, we conclude that Hertz was entitled to indemnification for the excess in issue.

Affirmed in part; reversed in part; remanded for further proceedings not inconsistent herewith.